In the Matter of the COMMITMENT OF Rusty BRADBURY,

Rusty Bradbury, Appellant–Defendant,

v.

Comprehensive Mental Health Services, Appellee–Plaintiff.

No. 18A04–0506–CV–355.

Court of Appeals of Indiana.

April 17, 2006.

L. Ross Rowland, Muncie, for Appellant.

Mark L. Abrell, David J. Karnes, Dennis, Wenger & Abrell, PC, Muncie, for Appellee.

## OPINION

KIRSCH, Chief Judge.

Rusty Bradbury appeals from the trial court's order involuntarily committing him temporarily to a mental institution.[1] He raises one issue, which we restate as whether sufficient evidence supported the involuntary commitment order.

We affirm.

---

1. Because Bradbury was committed for ninety days or less, the commitment from which he appeals has ended. Ordinarily this matter would then be moot. While we generally dismiss cases that are deemed moot, such cases may be decided on their merits where they involve questions of great public interest

## FACTS AND PROCEDURAL HISTORY

Bradbury suffers from bipolar disorder, a condition that falls within the term "mental illness" under IC 12–7–2–130. On May 28, 2005, an officer with the Muncie Police Department took Bradbury to the emergency room at Ball Memorial Hospital for an emergency detention after finding him on the streets talking loudly and acting disoriented. Danette Baird, a therapist for Comprehensive Mental Health Services ("CMHS"), initially evaluated Bradbury. Baird found him highly agitated and appearing to be delusional. Shortly thereafter, Dr. Taryn Papandria also evaluated Bradbury. Dr. Papandria determined that Bradbury was feeling manic and that he was combative, aggressive, and physically threatening. Dr. Papandria also discovered that Bradbury had taken himself off his medication.

On May 31, Dr. Amy Metzger, a licensed psychiatrist, further evaluated Bradbury. She confirmed Bradbury's bipolar condition and found that, while off his medication, Bradbury exhibited aggressive, agitated, and impulsive behavior. CMHS then filed an Application for Emergency Detention with the Delaware Circuit Court. The trial court set a hearing to determine whether to involuntarily commit Bradbury.

At the hearing, Baird and Dr. Metzger both testified concerning their earlier evaluations. Dr. Metzger testified that Bradbury suffered from bipolar disorder and was currently manic. Tr.at 7. Initially, Dr. Metzger found that Bradbury exhibited disorganized, aggressive, agitated, and de-

that are likely to recur. See Golub v. Giles, 814 N.E.2d 1034, 1036 n. 1 (Ind.Ct.App. 2004), trans. denied. The question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society. Id. Therefore we will address Bradbury's claim.

lusional behavior. *Id.* She further found that Bradbury hardly slept and required seclusion to protect others from his behavior. *Id.* Dr. Metzger explained that, between episodes of mania, bipolar patients will generally do fine, so despite his improvement since his initial detention, she still considered Bradbury gravely disabled. *Id.* at 7–8. Because of Bradbury's past failure to stay on his medication and his initial refusal of medication after his emergency detention, Dr. Metzger was concerned that if he were not committed, Bradbury's mental health would deteriorate further. *Id.* at 8, 10.

In issuing its Order of Temporary Commitment, the trial court found that (1) Bradbury was mentally ill, as defined under IC 12–7–2–130, and (2) that he was gravely disabled as defined under IC 12–7–2–96. *Appellant's App.* at 17. The trial court determined that Bradbury would be committed for ninety days or less to Ball Memorial Hospital and, if he was released from the hospital during this period, he must accept outpatient treatment from CMHS that included medication. *Id.* Bradbury now appeals.

### DISCUSSION AND DECISION

IC 12–26–6–1 allows a court to order an individual's temporary commitment that continues for up to ninety days if the petitioner proves by clear and convincing evidence that the individual is mentally ill and either "dangerous" or "gravely disabled." Civil commitment is a significant deprivation of liberty that requires the petitioner to show "that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior." *Addington v. Texas,* 441 U.S. 418, 427, 99 S.Ct. 1804, 1810, 60 L.Ed.2d 323, L.Ed.2d 323, 331 (1979). When we review an order for commitment, we consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *M.Z. v. Clarian Health Partners,* 829 N.E.2d 634, 637 (Ind.Ct.App.2005), *trans. denied.* We will not reweigh the evidence or judge the witnesses' credibility. *Golub,* 814 N.E.2d at 1038. "Where the evidence is in conflict, we are bound to view only that evidence that is most favorable to the trial court's judgment." *Id.* If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, the order must be affirmed, even if other reasonable conclusions are possible. *Id.*

Bradbury contends that the trial court lacked sufficient evidence to find him gravely disabled. IC 12–7–2–96 defines "gravely disabled" as:

a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual: (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Specifically, Bradbury contends that Dr. Metzger relied too heavily on evidence of Bradbury's past problems and failed to sufficiently apply the current indicia of Bradbury's current mental state. However, in her testimony, Dr. Metzger presented six current factors that indicated Bradbury was gravely disabled at the time of the hearing. Dr. Metzger found that Bradbury exhibited disorganized, aggressive, agitated, and delusional behavior. *Tr.* at 7. She further found that Bradbury hardly slept and required seclusion to protect others from his behavior. *Id.*

Dr. Metzger testified that Bradbury's symptoms resulted from his current failure to take his medication. *Id.* at 10. Al-

though Dr. Metzger stated that Bradbury was "doing better" than when he was first detained, she believed that he was still gravely disabled. *Id.* at 7. She described Bradbury's present condition as the typical temporary improvement that exists between episodes of mania. *Id.* at 7.

Essentially, Bradbury asks us to reweigh the evidence presented at his commitment hearing. This we cannot do. We may not reweigh evidence in reviewing a challenge to the sufficiency of the evidence with respect to commitment proceedings. *M.Z.*, 829 N.E.2d at 637. After hearing testimony from Dr. Metzger, Baird, and Bradbury, the trial court found that Bradbury was gravely disabled. The trial court's commitment order represents a conclusion that a reasonable person could have drawn and was sufficiently supported by clear and convincing evidence.

Affirmed.

SULLIVAN, J., and DARDEN, J., concur.